## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PEOPLE SOURCE STAFFING PROFESSIONALS, LLC, an Oklahoma limited liability company,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Case No.** CIV-19-275-R |
| **ANNA WILLIAMSON, an individual, WAYNE WILLIAMSON, an individual, KATHY WILLIAMSON, an individual, and WILL SOURCE, INC., a Delaware corporation,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

### PEOPLE SOURCE STAFFING PROFESSIONALS, LLC'S VERIFIED COMPLAINT FOR VIOLATIONS OF DEFEND TRADE SECRETS ACT AND REQUEST FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff, People Source Staffing Professionals, LLC ("People Source" or "Plaintiff"), for its Verified Complaint for Violations of the Defendant Trade Secrets Act and Request for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief (the "Verified Complaint") against Defendants, Anna Williamson ("Anna"), Wayne Williamson ("Wayne"), Kathy Williamson ("Kathy") and Will Source, Inc. ("Will Source") (collectively "Defendants"), alleges and states as follows:

### Parties

1.      People Source is a limited liability company organized and existing under the laws of Oklahoma, with its principal place of business in Oklahoma City, Oklahoma.

2.     People Source is also licensed to do business in the State of Louisiana and has offices in Monroe and Ruston, Louisiana.

3.     Anna is an individual who, upon information and belief, resides in Monroe, Louisiana.

4.     Wayne is an individual who, upon information and belief, resides in Monroe, Louisiana.

5.     Kathy is an individual who, upon information and belief, resides in Monroe, Louisiana.

6.     Will Source is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business, upon information and belief, located in Monroe, Louisiana.

## Jurisdiction and Venue

7.     This Court has personal jurisdiction over all parties to this action.  People Source is headquartered in Oklahoma and its principal place of business is Oklahoma. The Defendants, while not citizens of Oklahoma, have established the necessary minimum contacts with the State of Oklahoma for personal jurisdiction, and have purposefully availed themselves of the laws of this State.  The minimum contacts and purposeful availing of the laws of Oklahoma are discussed in greater detail in Paragraphs 12, 28, 29, 35, 43 and 58  of the Verified Complaint, which are incorporated by reference herein.

8.     This Court also has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 as People Source asserts claims pursuant to federal statute 18 U.S.C.

§ 1836, *et seq.* (the Federal Defend Trade Secrets Act referred to herein as the "DTSA").

9.     This Court also retains diversity jurisdiction over the parties to this action in that the amount in controversy is in excess of Seventy Five Thousand Dollars ($75,000.00), and diversity between the parties exists in that People Source is a citizen of the State of Oklahoma, while Defendants Anna, Kathy and Wayne Williamson are citizens of the State of Louisiana, and Will Source is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business, upon information and belief, located in Monroe, Louisiana.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial amount of the wrongdoing engaged in by the Defendants took place in Oklahoma as the Defendants utilized computer servers housed in Oklahoma for the transmission and misappropriation of People Source's trade secrets and confidential business information.

## People Source

11.     People Source was founded in December 2001 and is in the highly-competitive business of providing temporary staffing for People Source's employer customers, as well as providing direct hire staffing placement of employees for People Source's employer customers.  People Source employs approximately 10,000 temporary staff employees.

12.     People Source has a centralized back office for all personnel, human resource, financial and accounting functions for all of its offices.  Area Managers and Regional Vice-Presidents contact the Oklahoma City office on a daily basis for such back

office services and regularly access the People Source computer system located in Oklahoma City. All payroll payments for all the People Source offices are managed in Oklahoma City and payroll information is submitted to the Oklahoma City office from all People Source offices.

13.     People Source's corporate office is located in Oklahoma City, Oklahoma, but it also has eleven (11) offices located throughout Oklahoma, Arkansas, Tennessee and Louisiana.

14.     On February 1, 2016, People Source acquired its two (2) Louisiana locations in Monroe and Ruston, Louisiana from Diversity One, Inc., the predecessor by merger of Defendant Will Source, an entity wholly owned by Wayne and his wife Kathy Williamson.

15.     People Source's success in the highly competitive, temporary staffing and direct hire staffing businesses is based in large part on its ability to service and develop relationships with its customers. To meet its customers' service expectations and needs, People Source has developed and maintained, at great expense, valuable working relationships and substantial goodwill with its employer customers and its temporary staff, both of which are of paramount significance to its business reputation and success. People Source also develops and maintains a yearly budget for each of its locations which are based on its employer customers' anticipated staffing needs and the availability of temporary staffing in each of the markets in which it maintains operations.

16.     Due to the competitive nature of People Source's business, People Source undertakes all reasonable efforts to shield its trade secrets and other confidential and

proprietary business information from its competitors, e.g., pricing structure, sales techniques, sales strategies, bid proposals, contracts, budget proposals, business records, customer lists, current and proposed services, *etc*…. This confidential and proprietary business information has independent economic value, both actual and potential, because it is not generally known or readily ascertainable to the public or competitors -- People Source considers this information a valuable trade secret. Indeed, People Source's trade secrets and other confidential and proprietary business information afford People Source a competitive advantage over its competitors.

17. People Source's trade secrets and other confidential and proprietary information are known only to select People Source employees who require high-level access to access it in order to service People Source's customers. All People Source employees are informed of the sensitive nature of this information and are explicitly directed not to disclose this information to third parties. *See* Exhibit 1, pg. 14, People Source Employee Handbook. People Source further protects the secrecy and confidentiality of its trade secrets and other confidential and proprietary information by: (a) implementing restrictive covenant agreements, as well as issuing and enforcing employee handbooks, which describe trade secrets and other confidential and proprietary business information and impose non-disclosure obligations on the employees; and (b) maintaining trade secrets and other confidential and proprietary business information on password protected computer systems with login procedures that restrict access to only certain select People Source personnel.

18.     People Source derives economic value from the secrecy of its trade secrets and other confidential and proprietary information.   If disclosed to or used by a competitor, the competitor would be enabled to unfairly compete against People Source in the temporary staffing and direct hire placement staffing businesses. For instance, the disclosure of People Source's customer specific employment and staffing information, bid proposals and pricing structures would enable a competitor to underbid People Source when submitting competing bids on a temporary staffing or direct hire placement project and would enable a competitor to use People Source's customer-specific employment and staffing information without having to spend the time, effort, expense and resources that People Source expended in developing this custom-tailored approach to People Source's customer base.   Under these circumstances, the economic value of People Source's trade secrets and other confidential and proprietary information would be severely and irreparably damaged, if not completely lost, as would People Source's hard-fought advantage over its competitors.

### Anna's Employment with People Source

19.     On July 14, 2016, five (5) months after People Source acquired its Monroe and Ruston, Louisiana offices from Will Source, at the encouragement of Wayne and Kathy, People Source hired Anna, Wayne and Kathy's daughter, as the Area Manager for the Louisiana offices of People Source in Monroe and Ruston *See* Exhibit 2, Anna's Employment Letter.   Anna's employment coincided with Kathy's last day as an employee of People Source, where Kathy had provided office management during the

transition after People Source acquired the Monroe and Ruston offices from Kathy's company, Defendant Will Source.

20.     As part of Anna's initial employment with People Source, she was provided a copy of the People Source Employee Handbook *See* Ex. 1, Handbook, page 14) to which she was subject and that includes the following provision relating to Confidential Business Information of People Source:

> I understand that if hired, I may have access to certain proprietary and/or confidential information that has been developed by People Source or its clients to which I am assigned. I agree that such information, knowledge or other data includes all information, materials and data of any nature whatsoever, in whatever form, whether electronic, written, oral or any other form, that People Source or clients has a legitimate business interest in protecting any and all information which is not publicly available through legitimate means (collectively, "Confidential Business Information").

> I agree that all such Confidential Information, without regard to form, derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by ordinary means, other persons who can obtain economic value from its disclosure or use, that such Confidential Information is the subject of this restriction and that People Source's efforts are reasonable under the circumstances to maintain the Confidential Information's secrecy. In the event that I am hired, I am authorized to use and disclose, and I agree to use and disclose, Confidential Information only as necessary in the performance of my duties for People Source and/or People Source's client. **Otherwise, I agree to keep all such Confidential Information strictly confidential, both during my employment with People Source and thereafter. I further agree that I will not use Confidential Information of People Source or its clients for my own personal benefit or for the benefit of any third party during my employment or thereafter.**

> *Emphasis supplied.*

21.     In her role as Area Manager, Anna had access to all of People Source's customer-specific employment and staffing information and all of People Source's financial information relating to its customers and business in Louisiana.

22.     In her role as Area Manager, Anna was responsible for growing People Source's revenues in Monroe and Ruston by adding new customers to the existing customer base in Monroe and Ruston.

23.     As Area Manager, Anna was responsible for providing People Source's Corporate Office with monthly financial reports on the Monroe and Ruston office that would be used to determine the commissions payable to employees working in such offices and for determining Anna's commissions based on the profitability of the Monroe and Ruston offices.

24.     Anna performed the duties of Area Manager for the Monroe and Ruston locations until May 1, 2017 when she was promoted to Regional Vice-President for People Source's Northeast Region, which included Louisiana, Tennessee and Arkansas because, as indicated in her offer letter, she "will be a tremendous asset in growing this region." *See* Exhibit 3, Anna's Promotion Letter.

25.     In her role as Regional Vice-President Anna was responsible for growing People Source's revenues in her region by adding new customers to the existing offices and finding new markets to open additional People Source offices.   Indeed, Anna's promotion letter specifically provides "[o]ur goal is for you to look for opportunities for new locations such as Lake Charles and Texarkana with potential success." *See* Ex. 3.

26.     On several occasions, Anna recommended to the management team of People Source that People Source should open an office in Alexandria, Louisiana and on several occasions People Source Management encouraged and directed Anna to gather the information necessary to open such an office in Alexandria, Louisiana and present the plan for this expansion to People Source Management.

27.     In her role as Regional Vice-President, Anna had access to all of People Source's customer-specific employment and staffing information and all of People Source's financial information relating to People Source's customers and People Source's business in Louisiana, Tennessee and Arkansas.

28.     As both Area Manager and Regional Vice-President, Anna communicated with People Source's customers, and was exposed to and direct access to trade secrets and other confidential and proprietary business information relating to People Source's customers, employees, suppliers, and business methods and practices.  More specifically, Anna had access to People Source's pricing lists, customer lists, customer information, billing information, customer specific budgets, customer specific staffing needs, personal employee information, marketing plans, bid proposals, work orders, *etc.*.

29.     As Area Manager and Regional Vice-President, Anna accessed the back office computer systems of People Source in Oklahoma City and visited the Corporate Headquarters of People Source in Oklahoma City.

30.     On Friday, March 15, 2019, without any notice or indication, Anna unexpectedly emailed People Source Management with notice that she was resigning effective immediately. *See* Exhibit 4, Anna's Resignation Letter.  Anna chose this date

deliberately because she knew that People Source's Chief Executive Office had just departed for a trip out of the country and People Source's President had just left on a vacation with her family out of state, leaving People Source management in a vulnerable state for what the defendants planned to do next.

31.     Within an hour or so of Anna's resignation, all of People Source's employees in their Louisiana office resigned *en masse*, emailing letters of resignation to People Source that were effective immediately with all of this correspondence parroting precisely the same language used by each other and by Anna in her own resignation letter.  *See* Exhibit 5, Employee Resignation Letters.

32.     Presently, Anna is employed by Will Source, where she has been a Corporate Officer during the time she was an employee and Regional Vice-President of People Source.  *See* Exhibit 6, Louisiana Secretary of State Report on Will Source, Inc.

33.     Will Source is a direct competitor of People Source, with offices in Monroe and Ruston. *See* Exhibit 7, Will Source Website Print Out.

### Wayne's Engagement with People Source

34.     As part of the transaction whereby People Source acquired its two (2) Louisiana locations in Monroe and Ruston Louisiana from Will Source's predecessor Diversity One, Inc., Wayne entered into a Consulting Agreement with People Source "with respect to certain temporary staffing services in the State of Louisiana, in particular relating to such services in and around the Louisiana cities of Monroe and Ruston, the Parishes in which such cities are located and the Parishes contiguous thereto, and other

such services as requested…" by People Source. *See* Exhibit 8, Wayne's Consulting Agreement.

35.     Wayne's engagement with People Source was to serve as a broker and consultant for future acquisition projects for People Source and to refer customers to People Source, for which Wayne would receive commissions for such referrals.  During the course of this engagement, Wayne made a number of referrals to People Source's Management in Oklahoma City and worked with People Source's Management in Oklahoma City, some resulting in business deals for which People Source paid Wayne commissions.

36.     Section 7(a) and 7(b) of Wayne's Consulting Agreement (Ex. 8) contains the following language relating to non-disclosure of People Source's Confidential Information:

> (a)      <u>Confidential Information.</u>  Consultant acknowledges that (i) upon execution of this Agreement and during the term of this Agreement and as a part of his engagement by the Company and any subsidiaries, whether pursuant to this Agreement or otherwise, Consultant has been and will be afforded access to Confidential Information as hereinafter defined; (ii) public disclosure of such Confidential Information could have a material adverse impact on the Company and its business; and (iii) as a result of his access to such Confidential Information, Consultant will attain substantial expertise, skill and knowledge with respect to the Company's business. Consultant acknowledges that the provisions of this Section 0 are reasonable and necessary with respect to the improper use or disclosure of Confidential Information. As used in this Agreement, "Confidential Information" means any information, knowledge or data of any nature and in any form (including information that is electronically transmitted or stored on any form of storage  media) relating to the past, current or prospective business or operations of the Company, that at the time or times concerned is not generally known to persons engaged in businesses similar to those conducted  or  contemplated  by  the  Company  (other  than

information known by such persons through a violation of an obligation of confidentiality to the Company), whether produced by the Company or any of its consultants, agents or independent contractors or by Consultant, and whether or not marked confidential, including without limitation information relating to the Company's products and services, business plans, business acquisitions, processes, product or service research and development methods or techniques, inventions and improvements, training methods and other operational methods or techniques, quality assurance procedures or standards, operating procedures, files, plans, specifications, proposals, drawings, charts, graphs, support data, trade secrets, supplier lists, supplier information, purchasing methods or practices, distribution and selling activities, consultants' reports, marketing and engineering or other technical studies, maintenance records, employment or personnel data, marketing data, strategies or techniques, financial reports, budgets, projections, cost analyses, price lists and analyses, employee lists, customer lists, customer source lists, proprietary computer software, and internal notes and memoranda relating to any of the foregoing.

(b)     <u>Non-Disclosure of Confidential Information</u>. In consideration of the foregoing and of continued engagement by the Company and the compensation paid or provided and to be paid or provided to Consultant by the Company pursuant to this Agreement, **Consultant hereby covenants and agrees that both during and after the term of this Agreement, Consultant shall not,** without the Company's prior written consent or as may be required by law or legal process, **disclose, communicate, divulge or make available to any person or entity (other than the Company), or use for any purpose other than for the exclusive benefit of the Company, any Confidential Information,** whether Consultant has such information in his memory or embodied in writing or other physical form. Upon termination of Consultant's engagement hereunder, Consultant shall deliver promptly to the Company any Confidential Information in his possession, including any duplicates thereof and any notes or other records Consultant has prepared with respect thereto. In the event that the provisions of any applicable law or the order of any court would require Consultant to disclose or otherwise make available any Confidential Information then Consultant shall give the Company prompt prior written notice of such required disclosure and an opportunity to contest the requirement of such disclosure or apply for a protective order with respect to such Confidential Information by appropriate proceedings.  Consultant agrees that disclosures made by the Company to governmental authorities, to its customers or potential customers, to its suppliers or potential suppliers, to its employees or potential employees, to its consultants or potential consultants or disclosures made by the Company in any litigation

or administrative or governmental proceedings shall not mean that the matters so disclosed are available to the general public.  The foregoing, however, shall not limit the Company's authority to determine whether or not any such information has been so disclosed.

*Emphasis supplied.*

37.    Section 7(c) of Wayne's Consulting Agreement (Ex. 8) contains the following language relating to the prohibition of utilizing People Source's Confidential Information for Wayne's personal benefit or the benefit of third parties, stating as follows:

(i)    The Company shall disclose to Consultant, or place Consultant in a position to have access to or develop, trade secrets or confidential information of the Company; and/or shall entrust Consultant with business opportunities of the Company; and/or shall place Consultant in a position to develop business goodwill on behalf of the Company.

(ii)    **Consultant agrees not to disclose or utilize, for Consultant's personal benefit or for the direct or indirect benefit of any other person or entity, or for any other reason, whether for consideration or otherwise, during the term of his engagement hereunder or at any time thereafter,** any information, ideas, concepts, improvements, discoveries or inventions, whether patentable or not, which are conceived, made, developed, or acquired by Consultant, individually or in conjunction with others, during Consultant's Engagement by the Company (whether during business hours or otherwise and whether on the Company's premises or otherwise) which relate to the business, products, or services of the Company (including, without limitation, all such business ideas, prospects, proposals or other opportunities which are developed by Consultant during his employment hereunder, or originated by any third party and brought to the attention of Consultant during his employment hereunder, together with information relating thereto (including, without limitation, data, memoranda, opinions or other written, electronic or charted means, or any other trade secrets or other confidential or proprietary information of or concerning the Company) (collectively, "Business Information"). Moreover, all documents, drawings, notes, files, data, records, correspondence, manuals, models, specifications, computer programs, E-mail, voice mail, electronic databases, maps, and all other writings or materials of any type embodying any such Business Information are and

shall be the sole and exclusive property of the Company.  Upon termination of Consultant's engagement hereunder, for any reason, Consultant promptly shall deliver all Business Information, and all copies thereof, to the Company.  As a result of knowledge of confidential Business Information of third parties, such as customers, suppliers, partners, joint ventures, and the like, of the Company, Consultant also agrees to preserve and protect the confidentiality of such third party Business Information to the same extent, and on the same basis, as the Company's Business Information.

*Emphasis supplied.*

38.     Section 7(d) of Wayne's Consulting Agreement (Ex. 8) contains the following language relating to Wayne's agreement not to recruit People Source's employees, stating as follows:

(d)     <u>Non-Recruitment of Company Consultants</u>. **During the term of Consultant's engagement under this Agreement and for a period of two (2) years thereafter, Consultant will not directly or indirectly** (i) recruit, solicit, encourage or induce any employee of the Company to terminate such employment, (ii) otherwise disrupt any such employee's relationship with the Company, or (iii) whether individually or as owner, agent, employee, consultant or otherwise, hire, employ or offer employment to any person who is or was employed by the Company or an Affiliate thereof, whether or not such engagement is solicited by Consultant.

*Emphasis supplied.*

39.     Section 7(e) of Wayne's Consulting Agreement (Ex. 8) contains the following language relating to Wayne's agreement not to solicit People Source's customers, stating as follows:

(e)     <u>Non-Solicitation of Customers or Other Persons</u>.

(i)     **During the term of Consultant's engagement under this Agreement and for a period of two (2) years thereafter,** Consultant shall not solicit, induce, or attempt to induce any past, current or potential customer of the Company to (A) cease doing business in whole or in part with or through the Company or otherwise disrupt any previously

14

established relationship existing between such customer and the Company, or (B) do business with any other person or entity which performs services materially similar to or competitive with those provided by the Company. For purposes of this Agreement, current customers shall include all New Customers of the Company that Consultant may develop on behalf of the Company.  Also, for purposes of this Agreement, potential customers shall include all individuals or companies that Consultant calls on while engaged by the Company and all individuals and companies that Consultant and the Company discuss calling on during the term of this Agreement.

(ii)    **During the term of Consultant's engagement under this Agreement and for a period of two (2) years thereafter,** Consultant shall not solicit, induce, or attempt to induce any supplier, lessor, licensor, or other person who has a business relationship with the Company, or who on the date Consultant's engagement hereunder is engaged in discussions or negotiations to enter into a business relationship with the Company, to discontinue or reduce the extent of such relationship with the Company.

*Emphasis supplied.*

40.    And, Section 7(f) of Wayne's Consulting Agreement (Ex. 8) contains the

following language relating to Wayne's agreement not to compete against People Source,

stating as follows:

(f)    <u>Non-Competition with the Company</u>. Consultant acknowledges and agrees that the services which have been and will be performed by Consultant for the Company, whether during his engagement with the Company otherwise than pursuant to this Agreement, include services of a special, unique, unusual, extraordinary and intellectual character. Consultant further acknowledges that Consultant will be an integral part of conceiving, developing, marketing and selling the services in the Consultant's Restricted Territory.  Consultant further acknowledges that, by virtue of the character of his services, Consultant will be deemed to have worked for the Company at any and every location in the geographic area of the Consultant's Restricted Territory. **Therefore, Consultant hereby covenants and agrees that during the term of Consultant's engagement hereunder and for a period of two (2) years thereafter, Consultant will not directly or indirectly engage or invest in, own, manage, operate, control or participate in the ownership, management, operation or control of, be employed by, associated or connected with, or render services or advice to, any other business whose services, products or**

**activities compete in whole or in part with the services, products or activities of the Company, within the Consultant's Restricted Territory.** Consultant and the Company agree that the covenants contained in this Section 0, including the terms and geographical areas encompassed therein, are necessary and reasonable in order to protect the Company in the conduct of its business and preserve and protect the Company's business in accordance with La. Rev. Stat. Ann. 23:921(c). As used herein, "Restricted Territory" means any parish in which the Company had an office or had clients and any parishes contiguous thereto.

*Emphasis supplied.*

41.     Wayne's final day of his engagement pursuant to Wayne's Consulting Agreement was February 1, 2018, and as such all of the restrictive covenants set forth above remain in full force and effect as against Wayne and to protect People Source.

## Kathy's Employment with People Source

42.     As part of the transaction whereby People Source acquired its two Louisiana locations in Monroe and Ruston from Will Source's predecessor Diversity One, Inc., which was owned by Kathy, she entered into full-time Employment Agreement with People Source to provide management of the two locations during the transition period needed to find a new Area Manager. *See* Exhibit 9, Kathy's Employment Agreement.

43.     Just like Anna, when Kathy was the Area Manager in Louisiana for People Source, Kathy would access the back office computer systems of People Source and would regularly work with and communicate with People Source's back office staff in Oklahoma City.

44.     As part of Kathy's employment with People Source, she was provided a copy of the People Source Employee Handbook (Ex. 1, pg. 14) to which she was subject

and that includes the following provision relating to Confidential Business Information of

People Source:

> I understand that if hired, I may have access to certain proprietary and/or confidential information that has been developed by People Source or its clients to which I am assigned. I agree that such information, knowledge or other data includes all information, materials and data of any nature whatsoever, in whatever form, whether electronic, written, oral or any other form, that People Source or clients has a legitimate business interest in protecting any and all information which is not publicly available through legitimate means (collectively, "Confidential Business Information").

> I agree that all such Confidential Information, without regard to form, derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by ordinary means, other persons who can obtain economic value from its disclosure or use, that such Confidential Information is the subject of this restriction and that People Source's efforts are reasonable under the circumstances to maintain the Confidential Information's secrecy. In the event that I am hired, I am authorized to use and disclose, and I agree to use and disclose, Confidential Information only as necessary in the performance of my duties for People Source and/or People Source's client. **Otherwise, I agree to keep all such Confidential Information strictly confidential, both during my employment with People Source and thereafter. I further agree that I will not use Confidential Information of People Source or its clients for my own personal benefit or for the benefit of any third party during my employment or thereafter.**

*Emphasis supplied.*

45.     Sections 5(a) and 5(b) of Kathy's Employment Agreement contain the

following language relating to non-disclosure of People Source's Confidential

Information:

> (a)     Confidential Information.  Employee acknowledges that (i) upon execution of this Agreement and during the term of this Agreement and as a part of his engagement by the Company and any subsidiaries, whether pursuant to this Agreement or otherwise, Employee has been and will be afforded access to Confidential Information as hereinafter defined; (ii)

public disclosure of such Confidential Information could have a material adverse impact on the Company and its business; and (iii) as a result of his access to such Confidential Information, Employee will attain substantial expertise, skill and knowledge with respect to the Company's business. Employee acknowledges that the provisions of this Section 0 are reasonable and necessary with respect to the improper use or disclosure of Confidential Information. As used in this Agreement, "Confidential Information" means any information, knowledge or data of any nature and in any form (including information that is electronically transmitted or stored on any form of storage media) relating to the past, current or prospective business or operations of the Company, that at the time or times concerned is not generally known to persons engaged in businesses similar to those conducted or contemplated by the Company (other than information known by such persons through a violation of an obligation of confidentiality to the Company), whether produced by the Company or any of its consultants, agents or independent contractors or by Employee, and whether or not marked confidential, including without limitation information relating to the Company's products and services, business plans, business acquisitions, processes, product or service research and development methods or techniques, inventions and improvements, training methods and other operational methods or techniques, quality assurance procedures or standards, operating procedures, files, plans, specifications, proposals, drawings, charts, graphs, support data, trade secrets, supplier lists, supplier information, purchasing methods or practices, distribution and selling activities, consultants' reports, marketing and engineering or other technical studies, maintenance records, employment or personnel data, marketing data, strategies or techniques, financial reports, budgets, projections, cost analyses, price lists and analyses, employee lists, customer lists, customer source lists, proprietary computer software, and internal notes and memoranda relating to any of the foregoing.

(b)    Non-Disclosure of Confidential Information. In consideration of the foregoing and of continued employment by the Company and the compensation and benefits paid or provided and to be paid or provided to Employee by the Company pursuant to this Agreement, **Employee hereby covenants and agrees that both during and after the term of this Agreement, Employee shall not,** without the Company's prior written consent or as may be required by law or legal process, **disclose, communicate, divulge or make available to any person or entity (other than the Company), or use for any purpose other than for the exclusive benefit of the Company, any Confidential Information,** whether Employee has such information in her memory or embodied in writing or other physical form.    Upon termination of Employee's employment

hereunder, Employee shall deliver promptly to the Company any Confidential Information in her possession, including any duplicates thereof and any notes or other records Employee has prepared with respect thereto. In the event that the provisions of any applicable law or the order of any court would require Employee to disclose or otherwise make available any Confidential Information then Employee shall give the Company prompt prior written notice of such required disclosure and an opportunity to contest the requirement of such disclosure or apply for a protective order with respect to such Confidential Information by appropriate proceedings. Employee agrees that disclosures made by the Company to governmental authorities, to its customers or potential customers, to its suppliers or potential suppliers, to its employees or potential employees, to its consultants or potential consultants or disclosures made by the Company in any litigation or administrative or governmental proceedings shall not mean that the matters so disclosed are available to the general public. The foregoing, however, shall not limit the Company's authority to determine whether or not any such information has been so disclosed.

*Emphasis supplied.*

46.     Section 5(c) of Kathy's Employment Agreement contains the following language relating to the prohibition of utilizing People Source's Confidential Information for Kathy's personal benefit or the benefit of third parties, stating as follows:

(i)     The Company shall disclose to Employee, or place Employee in a position to have access to or develop, trade secrets or confidential information of the Company; and/or shall entrust Employee with business opportunities of the Company; and/or shall place Employee in a position to develop business goodwill on behalf of the Company.

(ii)     **Employee agrees not to disclose or utilize, for Employee's personal benefit or for the direct or indirect benefit of any other person or entity, or for any other reason, whether for consideration or otherwise, during the term of her employment hereunder or at any time thereafter,** any information, ideas, concepts, improvements, discoveries or inventions, whether patentable or not, which are conceived, made, developed, or acquired by Employee, individually or in conjunction with others, during Employee 's Employment by the Company (whether during business hours or otherwise and whether on the Company's premises or otherwise) which relate to the business, products, or services of the

Company (including, without limitation, all such business ideas, prospects, proposals or other opportunities which are developed by Employee during her employment hereunder, or originated by any third party and brought to the attention of Employee during her employment hereunder, together with information relating thereto (including, without limitation, data, memoranda, opinions or other written, electronic or charted means, or any other trade secrets or other confidential or proprietary information of or concerning the Company) (collectively, "Business Information"). Moreover, all documents, drawings, notes, files, data, records, correspondence, manuals, models, specifications, computer programs, E-mail, voice mail, electronic databases, maps, and all other writings or materials of any type embodying any such Business Information are and shall be the sole and exclusive property of the Company.  Upon termination of Employee's employment hereunder, for any reason, Employee promptly shall deliver all Business Information, and all copies thereof, to the Company.  As a result of knowledge of confidential Business Information of third parties, such as customers, suppliers, partners, joint ventures, and the like, of the Company, Employee also agrees to preserve and protect the confidentiality of such third party Business Information to the same extent, and on the same basis, as the Company's Business Information.

*Emphasis supplied.*

## **Defendants' Wrongful and Unlawful Conduct**

47.     Upon information and belief, Anna, Wayne, Kathy, and Will Source, acting through its owners and corporate officers, Anna and Kathy, in October 2018, hatched the plan and began planning a coordinated effort to take all of People Source's trade secrets and confidential business information relating to its business in Louisiana, including all of People Source's customer specific employment and staffing information and all of People Source's financial information relating to People Source's customers and operations in Louisiana, in violation of the DTSA, Anna's Employment Agreement, Wayne's Consulting Agreement, Kathy's Employment and People Sources Employee

Manual all for their own personal benefit and the financial benefit of their company, defendant Will Source.

48.     Upon information and belief, Anna, Wayne, Kathy, and Will Source, acting through its owners and corporate officers, Anna and Kathy, did in October 2018, seek a contract with Avionte, the same staffing company billing service used by People Source, so that they could easily transfer all of People Source's trade secrets and confidential business information they planned to misappropriate relating to its business in Louisiana, including all People Source's customer specific employment and staffing information and all of People Source's financial information relating to People Source's customers and operations in Louisiana,

49.     Upon information and belief, Anna, Wayne, Kathy, and Will Source, acting through its owners and corporate officers, Anna and Kathy, did in October 2018, take all the information that Anna had gathered relating to establishing an office in Alexandria, Louisiana for People Source, and used those misappropriated trade secrets, confidential business information and business plans and strategies of People Source about the Alexandria, Louisiana market that Anna gathered while she was a full-time employee of People Source (with fiduciary obligations to her employer) and conspired to and did use the same to open an office for Will Source in Alexandria, Louisiana.

50.     Upon information and belief, in late 2018 and early 2019, Anna began to copy all of People Source's trade secrets and other confidential business information relating to its business in Louisiana, including all of People Source's customer specific

employment and staffing information and contracts, and all of People Source's financial information relating to People Source's customers and operations in Louisiana.

51.     Upon information and belief, Anna, while working full-time for People Source began to notify People Source's customers that she, Wayne and Kathy would be moving all of People Source's Louisiana employees (both personnel in the Monroe and Rustin offices and the temporary staff placed at and working for the People Source Employer customers) to a new operation in Monroe.

52.     Upon information and belief, a week to ten (10) days before the Anna Resignation Letter and the Employee Resignation Letters were submitted, Anna incredibly (and deceitfully) told all of the People Source's Monroe and Ruston office personnel that "we are moving to new offices" and did not mention to any of People Source's Monroe and Ruston office personnel that the "new offices" were actually offices of Will Source.

53.     Upon information and belief, the day before the Anna Resignation Letter and the Employee Resignation Letters were submitted, Anna informed all of the People Source's Monroe and Ruston office personnel for the first time that the "new offices" were owned by Will Source and that they would be resigning from People Source the next day and all going to work for Will Source.

54.     Upon information and belief, Anna intimidated and cajoled all of People Source's Monroe and Ruston office personnel to send their resignation letters to People Source Management or either risk discharge from People Source (their true employer), or the prospect of not being hired by the doppelganger new employer they had created in the

shadows to supplant People Source.  The defendants created the proverbial rock and a hard place and threw the employees into that impossible situation for their own personal gain.

55.    Anna also told these employees that People Source was having financial problems and that People Source had failed to pay commissions due in Louisiana -- both false statements made to convince People Source's employees to resign and join Will Source.

56.    Upon information and belief, Wayne displayed his true intent when he told several People Source employees in Monroe and Ruston that, "he had [People Source's Chief Executive Officer] David's balls in his hand and that he was going to force David to sell him back the company for far less than People Source paid for it."

57.    On March 15, 2019, the day that Anna sent the Anna Resignation Letter and all the People Source employees in Monroe and Ruston sent the Employee Resignation Letters, Anna, Wayne and Kathy held a party at the new Will Source offices, serving food and champagne ostensibly to celebrate Will Source's new office, but actually to celebrate having misappropriated all of People Sources trade secrets and confidential business information from its Louisiana operations by deceptive and improper means.  Wayne gathered all the employees together and informed them he was happy they were joining the Will Source Team then had all the employees join hands in a circle and Wayne led them in prayer.

58.    Upon information and belief, Anna, Wayne, Kathy, and Will Source, acting through its owners and corporate officers, Anna and Kathy, surreptitiously converted

trade secrets and other confidential and proprietary information from People Source and are using this highly-confidential information to create an unfair competitive advantage to the detriment of People Source -- Anna, Wayne, Kathy, and Will Source, acting through its owners and corporate officers, Anna and Kathy, continue to use People Source's highly-confidential information.  Anna, Wayne, Kathy, and Will Source, acting through its owners and corporate officers, Anna and Kathy, are all active participants in this wrongful and unlawful conduct and procured People Source's trade secrets and other confidential and proprietary business information with full knowledge they did not have People Source's consent. Upon information and belief, Defendants utilized computer servers housed in Oklahoma for the transmission and misappropriation of People Source's trade secrets and confidential business information, thereby crossing state lines and intentionally reaching into the State of Oklahoma in order to engage in wrongdoing.

59.     Upon information and belief, Anna, Wayne, Kathy, and Will Source, acting through its owners and corporate officers, Anna and Kathy, also took People Source's trade secrets and other confidential and proprietary business information and are using this highly-confidential information for their personal benefit and benefit of Will Source to create an unfair competitive advantage to the detriment of People Source.

60.     Upon information and belief, Anna, Wayne, Kathy, and Will Source, acting through its owners and corporate officers, Anna and Kathy, are using People Source's trade secrets and other confidential and proprietary business information to actively solicit People Source's customers for the benefit and profit themselves personally and benefit and profit Will Source.  Customers of People Source have informed People

Source that Anna has solicited their businesses on behalf of Will Source, even telling People Source customers (falsely) that People Source was in financial distress.  Anna is making these negative and disparaging comments about People Source to create an unfair competitive advantage to the detriment of People Source and to tortiously interfere with People Source's existing contractual relationships.  Since Anna resigned her employment with People Source and misappropriated People Source's trade secrets and confidential business information, People Source has lost a significant amount of business and revenue to Will Source.

61.    Upon information and belief, Anna actively solicited and continues to solicit key People Source employees to work for Will Source using People Source's confidential and proprietary business information.  While some People Source employees came back to work at People Source the Monday after their Friday delivery of their respective Employee Resignation Letters, People Source has been compelled to pay these returning employees higher wages just to recover and retain personnel they had already expended resources on in the form of training, wages and personal and professional development.

62.    Because of Defendants' wrongful and unlawful conduct in misappropriating all of People Source's trade secrets from its Louisiana operations, People Source was forced to temporarily uproot and transplant management and office staff from its corporate office and other offices in different states to Louisiana until such time as the disruptions caused by Defendants' actions can be resolved, and has thereby

incurred a substantial spike in operating costs in addition to the substantial economic damages from the lost customers pilfered by the Defendants.

63.     Defendants' actions have resulted in great financial harm to People Source which is continuing as of the date of this Verified Complaint and will continue into the future without an abatement of the wrongdoing of the Defendants.

## FIRST CAUSE OF ACTION

## <u>VIOLATIONS OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 *et seq.*</u>
### (All Defendants)

64.     People Source adopts and incorporates by reference the allegations set forth in paragraphs 1-63, and the introductory statement, in this Verified Complaint.

65.     Certain of People Source's business practices and methods, and information relating to its products, customers, suppliers, manufacturers and vendors, including, without limitation,  products, pricing structures, pricing lists, customer lists, customer information, billing information, customer specific budgets, personal employee information, marketing plans, bid proposals, work orders, service orders, material orders, new product information, material specifications, technical know-how, processes, product development, marketing and pricing strategies, compilations of industry data and consumer needs, habits and preferences, intellectual property and other technical information, and non-published financial and sales information, are proprietary and confidential to People Source and constitute protectable trade secrets and other confidential business information under the DTSA.

66.    People Source has taken reasonable efforts to protect and maintain the secrecy and confidentiality of its trade secrets and confidential business information.

67.    People Source's trade secrets are not generally known in the employee staffing and direct hire industry or to the general public, and their secrecy confers substantial economic advantage and benefit to People Source.  Knowledge of this information would also confer a substantial economic benefit to People Source's competitors, including the Defendants.

68.    The circumstances of the individual Defendants' employment or consulting arrangement with People Source gave rise to fiduciary duties and contractual obligations to maintain the secrecy of People Source's trade secrets and confidential business information and to strictly limit their use to People Source business activities and for People Source's exclusive benefit.

69.    Defendants, through improper means and without authorization, either directly or indirectly misappropriated, misused and/or disclosed People Source's trade secrets to and for the benefit of themselves and Will Source.

70.    In addition, the Defendants systematically targeted and solicited key People Source employees to work for Will Source in the same or substantially similar capacity in which they worked for People Source, knowing that they possess specific knowledge of People Source's trade secrets and confidential business information and that such trade secrets and confidential business information would provide immediate benefit to the Defendants.

71.     Moreover, upon information and belief, some or all of the individual Defendants are performing and will continue to perform work for Will Source that is so similar to their responsibilities at People Source that it will not be possible for them to discharge those responsibilities without disclosing, using and/or relying upon their knowledge of People Source's trade secrets and confidential business information for the benefit of Will Source.  Thus, not only have the individual Defendants already induced, disclosed, used and/or relied upon People Source's trade secrets and confidential business information for the benefit of Will Source, it is inevitable that they will continue to do so unless they are restrained and enjoined from continuing to do so.

72.     As a direct and proximate result of the Defendants' deliberate, willful and malicious misappropriation of People Source's trade secrets and confidential business information, People Source has sustained and will continue to sustain severe, immediate and irreparable harm, damage and injury to the value of its trade secrets, confidential business information and competitive advantage, which People Source has expended significant time, effort and money to secure.

**WHEREFORE**, People Source respectfully requests the Court to enter judgment in its favor on People Source's First Cause of Action and award the following relief:

(a)     Temporary restraining order, and preliminary and permanent injunctive relief, as set forth in People Source's Second Cause of Action below;

(b)     Compensatory/actual damages in an amount to be determined at trial pursuant, but in excess of $75,000.00 (as a minimum) for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332;

(c)     All available damages for the Defendants' unjust enrichment caused by the misappropriation of any and all trade secrets or other confidential business information that is not addressed in computing damages for the actual losses requested above;

(d)     In lieu of damages measured by any other available methods under the DTSA, People Source seeks the damages caused by the misappropriation of the Defendants measured by imposition of liability for a reasonable royalty for the Defendants' unauthorized disclosures and/or use of the trade secrets.

(e)     Based on the willful and malicious conduct of the Defendants, People Source seeks exemplary damages of two (2) times the amount of actual damages awarded.

(f)     Reasonable attorney's fees and such other relief as the Court deems just and proper.

SECOND CAUSE OF ACTION

**INJUNCTIVE RELIEF**
**(All Defendants)**

73.     People Source adopts and incorporates by reference the allegations set forth in paragraphs 1-72, and the introductory statement, in this Verified Complaint.

74.     People Source has a clearly ascertainable and protectable right to: (i) enforce the Agreements with the Defendants; (ii) prevent the unauthorized disclosure and/or use of its confidential information; (iii) maintain a stable workforce and protect against the raiding of key employees by former employees and competitors; and (iv)

prevent actual or threatened misappropriation, and inevitable disclosure, of its trade secrets under the DTSA.

75.     People Source has a strong likelihood of prevailing on the merits of its causes of action, including those causes of action which entitle People Source to injunctive relief.

76.     People Source's remedy at law is inadequate, and it will suffer irreparable harm if injunctive relief is not granted, because, among other things, it derives immeasurable value from: (i) the secrecy of its trade secrets and other confidential and proprietary information; and (ii) the stability of its workforce and key employees that are essential to the operation of People Source and for the maintenance of customer relationships.  Both of these protectable interests afford People Source a competitive advantage in the marketplace.  If the status quo is not maintained, People Source will continue to lose this competitive advantage.

77.     Defendants will not be injured by the entry of a restraining order and injunction because the individual Defendants can continue to work for Will Source and Will Source can continue operating its temporary employee staffing business.  The restraining order and injunction would only prohibit the Defendants from using People Source's trade secrets and other confidential and proprietary information illegally obtained to unfairly compete against People Source.  Further, the Defendants cannot properly claim injury from undertaking conduct of which they are legally prohibited from pursuing.

78.    The public interest is in favor of protecting property rights and fair competition in the marketplace.   Certainly the public interest is not offended by restraining Defendants from using People Source's trade secrets and other confidential and proprietary information to the detriment of People Source, especially, when, as here, the individual Defendants are not foreclosed from working for Will Source, nor are Defendants foreclosed from operating their business.

**WHEREFORE**, People Source respectfully requests the Court to enter judgment in its favor on People Source's Second Cause of Action and award the following relief:

(a)    Temporary restraining order, and preliminary and permanent injunction, to:

(i)    Restrain and enjoin Defendants from, directly or indirectly, misappropriating, disclosing and/or using People Source's trade secrets and confidential business information;

(b)    Preliminary and permanent injunction to enjoin Defendants from developing, marketing and/or selling any product incorporating People Source's trade secrets, confidential information and/or exclusive intellectual property rights;

(c)    Mandatory injunction to compel Defendants to assign to People Source the entire right, title and interest in all products and intellectual property based on and/or incorporating People Source trade secrets, confidential information and/or exclusive intellectual property rights;

(d)     Mandatory injunction to compel Defendants to return all People Source trade secrets, confidential information, and all other proprietary information and property belonging to People Source; and

(e)     Such other relief as the Court deems just and proper.

## **JURY DEMAND**
### **(All Claims)**

People Source demands trial by jury on all the claims for damages.

Respectfully submitted,

*s/ Adam W. Childers*
Adam W. Childers, OBA #18673
Allen Hutson, OBA #30118

-- Of the Firm --

CROWE & DUNLEVY
A Professional Corporation
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
adam.childers@crowedunlevy.com
allen.hutson@crowedunlevy.com

ATTORNEYS FOR PLAINTIFF PEOPLE SOURCE STAFFING PROFESSIONALS, LLC

## **VERIFICATION**

I, David L. Bozalis, Chief Executive Officer of People Source Staffing Professionals, LLC, have reviewed the factual allegations of this Verified Complaint and verify that the statements contained therein are true and correct to the best of my knowledge and belief.

_David L. Bozal_

Name: David L. Bozalis
Title: Chief Executive Officer

Subscribed and sworn to before me this __ZZ__ day of March, 2019

_____
Notary Public

My Commission Expires:

__4/25/19__
[SEAL]